**LSK&D #: 564-8006 / 1007682**
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

CINDY HOGAN-CROSS,

                          Plaintiff,

              -against-

METROPOLITAN LIFE INSURANCE
COMPANY and INTERNATIONAL BUSINESS
SYSTEMS CORP.,

                         Defendants.
----------------------------------------------------------------x

**No. 08 CV 00012 (LAK)**

**DECLARATION OF
ALLAN M. MARCUS**

I, Allan M. Marcus, declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am Of Counsel to the law firm of Lester Schwab Katz & Dwyer, LLP, attorneys for Defendants in the above-captioned action.  I submit this Declaration in support of Defendants' Motion to Dismiss Defendant International Business Machines Corporation ("IBM") (incorrectly sued as "International Business Systems Corporation") from this action.

2.      Attached hereto as Exhibit A are true copies of excerpts from the IBM Long-Term Disability ("LTD") Plan Summary Plan Description ("SPD"), effective January 1, 2005, which incorporates Defendant Metropolitan Life Insurance Company's ("MetLife") Certificate of Insurance for Group Policy no. 26612-2-F.

3.      Attached hereto as Exhibit B is a true copy of plaintiff's Amended Complaint (Docket No. 11).

Dated:     New York, New York
            April 11, 2008

                                _____
                                Allan M. Marcus

**EXHIBIT "A"**

# YOUR BENEFIT PLAN


# INTERNATIONAL BUSINESS MACHINES CORPORATION


### Disability Income Insurance:  Long Term Benefits


Employees Hired as of December 31, 2003 and
Employees Hired On or After January 1, 2004
With More Than 5 Years of Service


### Effective  January 1, 2005


### 26612-117542

# MetLife®

Metropolitan Life Insurance Company
200 Park Avenue, New York, New York  10166

## CERTIFICATE OF INSURANCE

Metropolitan Life Insurance Company ("MetLife"), a stock company, certifies that You are insured for the benefits described in this certificate, subject to the provisions of this certificate.  This certificate is issued to You under the Group Policy and it includes the terms and provisions of the Group Policy that describe Your insurance.  **PLEASE READ THIS CERTIFICATE CAREFULLY.**

This certificate is part of the Group Policy. The Group Policy is a contract between MetLife and the Policyholder and may be changed or ended without Your consent or notice to You.

**Policyholder:**                              International Business Machines Corporation

**Group Policy Number:**          26612-2-G

**Type of Insurance:**              Disability Income Insurance:  Long Term Benefits

**MetLife Toll Free Number(s):**
**For Claim Information**            FOR DISABILITY INCOME CLAIMS: 1-800-638-0064

THIS CERTIFICATE ONLY DESCRIBES DISABILITY INSURANCE.

THE BENEFITS OF THE POLICY PROVIDING YOU COVERAGE ARE GOVERNED PRIMARILY BY THE LAWS OF A STATE OTHER THAN FLORIDA.

THE GROUP INSURANCE POLICY PROVIDING COVERAGE UNDER THIS CERTIFICATE WAS ISSUED IN A JURISDICTION OTHER THAN MARYLAND AND MAY NOT PROVIDE ALL THE BENEFITS REQUIRED BY MARYLAND LAW.

WE ARE REQUIRED BY STATE LAW TO INCLUDE THE NOTICE(S) WHICH APPEAR ON THIS PAGE AND IN THE NOTICE(S) SECTION WHICH FOLLOWS THIS PAGE.  PLEASE READ THE(SE) NOTICE(S) CAREFULLY.

## DEFINITIONS

As used in this certificate, the terms listed below will have the meanings set forth below. When defined terms are used in this certificate, they will appear with initial capitalization. The plural use of a term defined in the singular will share the same meaning.

**Actively at Work or Active Work** means that You are performing all of the usual and customary duties of Your job on a Full-Time or regular part-time basis. This must be done at:

- the Policyholder's place of business;
- an alternate place approved by the Policyholder; or
- a place to which the Policyholder's business requires You to travel.

You will be deemed to be Actively at Work during weekends or Policyholder approved vacations, holidays or business closures if You were Actively at Work on the last scheduled work day preceding such time off.

**Appropriate Care and Treatment** means medical care and treatment that is:

- given by a Physician whose medical training and clinical specialty are appropriate for treating Your Disability;
- consistent in type, frequency and duration of treatment with relevant guidelines of national medical research, health care coverage organizations and governmental agencies;
- consistent with a Physician's diagnosis of Your Disability; and
- intended to maximize Your medical and functional improvement.

**Beneficiary** means the person(s) to whom We will pay insurance as determined in accordance with the GENERAL PROVISIONS section.

**Contributory Insurance** means insurance for which the Policyholder requires You to pay any part of the premium.

Contributory Insurance includes: Disability Income Insurance and any increase elected under a buy-up provision.

**Disabled** or **Disability** means that, due to Sickness or as a direct result accidental injury:

- You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and

- You are, during the Elimination Period and the next 12 months of Sickness or accidental injury unable to perform each of the material duties of Your Own Job; and

- You are, after such period unable to perform the duties of any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

For purposes of determining whether a Disability is the direct result of an accidental injury, the Disability must have occurred within 90 days of the accidental injury and resulted from such injury independent of other causes.

If Your occupation requires a license, the fact that You lose Your license for any reason will not, in itself, constitute Disability.

**Elimination Period** means the period of Your Disability during which We do not pay benefits. The Elimination Period begins on the day You become Disabled and continues for the period shown in the SCHEDULE OF BENEFITS.

## DEFINITIONS (continued)

**Full-Time** means Active Work as an employee in the eligible class of employees to which You belong, for the time period determined by the Policyholder.

**Local Economy** means the geographic area:

- within which You reside; and
- which offers suitable employment opportunities within a reasonable travel distance.

If You move on or after the date You become Disabled, We may consider both Your former and current residence to be Your Local Economy.

**Noncontributory Insurance** means insurance for which the Policyholder does not require You to pay any part of the premium.

**Own Job** means the essential functions You regularly perform for the Policyholder that provide Your primary source of earned income.

**Physician** means:

- a person licensed to practice medicine in the jurisdiction where such services are performed; or
- any other person whose services, according to applicable law, must be treated as Physician's services for purposes of the Group Policy. Each such person must be licensed in the jurisdiction where he performs the service and must act within the scope of that license. He must also be certified and/or registered if required by such jurisdiction.

**The term does not include:**

- You;
- Your Spouse; or
- any member of Your immediate family including Your and/or Your Spouse's:
    - parents;
    - children (natural, step or adopted);
    - siblings;
    - grandparents; or
    - grandchildren.

**Policyholder's Retirement Plan** means a plan which:

- provides retirement benefits to employees; and
- is funded in whole or in part by Policyholder contributions.

**The term does not include:**

- profit sharing plans;
- thrift or savings plans;
- non-qualified plans of deferred compensation;
- plans under IRC Section 401(k) or 457;

## DEFINITIONS (continued)

- individual retirement accounts (IRA);
- tax sheltered annuities (TSA) under IRC Section 403(b);
- stock ownership plans; or
- Keogh (HR-10) plans.

**Predisability Earnings** means:

- If you are classified as an executive, the gross base salary plus the incentive pay You were earning from the Policyholder as of Your last day of Active Work before Your Disability began, as determined by the Policyholder. This amount is calculated on a monthly basis.

- If You are classified as a salaried employee, Your gross regular monthly compensation that You were earning from the Policyholder for regularly scheduled hours up to 40 hours per week, as determined by the Policyholder, as of Your last day of Active Work before Your Disability began.

- If You are classified as a non-executive commissioned employee, Your on-target earnings, as defined by the Policyholder, that You were earning from the Policyholder on Your last day of Active Work before Your Disability began.

**The term Predisability Earnings includes:**

contributions You were making through a salary reduction agreement with the Policyholder to any of the following:

- an Internal Revenue Code (IRC) Section 401(k), 403(b) or 457 deferred compensation arrangement;
- an executive non-qualified deferred compensation arrangement; and
- Your fringe benefits under an IRC Section 125 plan.

**The term Predisability Earnings does not include:**

- awards;
- overtime pay;
- the Policyholder's contributions on Your behalf to any deferred compensation arrangement or pension plan; or
- any other compensation from the Policyholder.

**Proof** means Written evidence satisfactory to Us that a person has satisfied the conditions and requirements for any benefit described in this certificate. When a claim is made for any benefit described in this certificate, Proof must establish:

- the nature and extent of the loss or condition;
- Our obligation to pay the claim; and
- the claimant's right to receive payment.

Proof must be provided at the claimant's expense.

## DEFINITIONS (continued)

**Rehabilitation Program** means a program that has been approved by Us for the purpose of helping You return to work.  It may include, but is not limited to, Your participation in one or more of the following activities:

- return to work on a modified basis with a goal of resuming employment for which You are reasonably qualified by training, education, experience and past earnings;
- on-site job analysis;
- job modification/accommodation;
- training to improve job-seeking skills;
- vocational assessment;
- short-term skills enhancement;
- vocational training; or
- restorative therapies to improve functional capacity to return to work.

**Sickness** means illness, disease or pregnancy, including complications of pregnancy.

**Signed** means any symbol or method executed or adopted by a person with the present intention to authenticate a record, which is on or transmitted by paper or electronic media which is acceptable to Us and consistent with applicable law.

**Spouse** means Your lawful spouse.

**We, Us** and **Our** mean MetLife.

**Written** or **Writing** means a record which is on or transmitted by paper or electronic media which is acceptable to Us and consistent with applicable law.

**You** and **Your** mean an employee who is insured under the Group Policy for the insurance described in this certificate.

## DISABILITY INCOME INSURANCE: LONG TERM BENEFITS

If You become Disabled while insured, Proof of Disability must be sent to Us. When We receive such Proof, We will review the claim. If We approve the claim, We will pay the Monthly Benefit up to the Maximum Benefit Period shown in the SCHEDULE OF BENEFITS, subject to THE DATE BENEFIT PAYMENTS END section.

To verify that You continue to be Disabled without interruption after Our initial approval, We may periodically request that You send Us Proof that You continue to be Disabled. Such Proof may include physical exams, exams by independent medical examiners, in-home interviews or functional capacity exams, as needed.

While You are Disabled, the Monthly Benefit described in this certificate will not be affected if:

- Your insurance ends; or
- the Group Policy is amended to change the plan of benefits for Your class.

### BENEFIT PAYMENT

If We approve Your claim, benefits will begin to accrue on the day after the day You complete Your Elimination Period. We will pay the first Monthly Benefit on the date which occurs on the first day of the month after the date benefits begin to accrue. We will make subsequent payments monthly thereafter so long as You remain Disabled. Payment will be based on the number of work days for the month in which You are Disabled.

We will pay Monthly Benefits to You. If You die, We will pay the amount of any due and unpaid benefits as described in the GENERAL PROVISIONS subsection entitled Disability Income Benefit Payments: Who We Will Pay.

While You are receiving Monthly Benefits, You will not be required to pay premiums for the cost any disability income insurance defined as Contributory Insurance.

### RECOVERY FROM A DISABILITY

If You return to Active Work, We will consider You to have recovered from Your Disability.

The provisions of this subsection will not apply if Your insurance has ended and You are eligible for coverage under another group long term disability plan.

#### If You Return to Active Work After Completing Your Elimination Period

If You return to Active Work after completing Your Elimination Period for a period of 90 days or less, and then become Disabled again due to the same or related Sickness or accidental injury, We will not require You to complete a new Elimination Period. For the purpose of determining Your benefits, We will consider such Disability to be a part of the original Disability and will use the same Predisability Earnings and apply the same terms, provisions and conditions that were used for the original Disability.

If You return to Active Work for a period of more than 90 days and then become Disabled again, You will have to complete a new Elimination Period.

For purposes of this provision, the term Active Work includes all of the continuous days which follow Your return to work for which You are not Disabled.

## DISABILITY INCOME INSURANCE: LONG TERM BENEFITS (continued)

**REHABILITATION INCENTIVES**

**Work Incentive**

While You are Disabled, We encourage You to work. If You work while You are Disabled and receiving Monthly Benefits, Your Monthly Benefit will be adjusted as follows:

- reduced by Other Income as defined in the DISABILITY INCOME INSURANCE: INCOME WHICH WILL REDUCE YOUR DISABILITY BENEFIT section.

Your Monthly Benefit as adjusted above will not be reduced by the amount You earn from working, except to the extent that such adjusted Monthly Benefit plus the amount You earn from working and the income You receive from Other Income exceeds 100% of Your Predisability Earnings as calculated in the definition of Disability.

In addition, the Minimum Monthly Benefit will not apply.

**Limit on Work Incentive**

After the first 24 months following Your Elimination Period We will reduce Your Monthly Benefit by 50% of the amount You earn from working while Disabled.

## FILING A CLAIM

The Policyholder should have a supply of claim forms. Obtain a claim form from the Policyholder and fill it out carefully. Return the completed claim form with the required Proof to the Policyholder. The Policyholder will certify Your insurance under the Group Policy and send the certified claim form and Proof to Us.

When We receive the claim form and Proof, We will review the claim and, if We approve it, We will pay benefits subject to the terms and provisions of this certificate and the Group Policy.

### CLAIMS FOR INSURANCE BENEFITS

**When a claimant files an initial claim for Disability Income Insurance benefits described in this certificate**, both the notice of claim and the required Proof should be sent to Us within 90 days of the date of a loss.

Notice of claim and Proof may also be given to Us by following the steps set forth below:

**Step 1**
A claimant may give Us notice by calling Us at the toll free number shown in the Certificate Face Page within 20 days of the date of a loss.

**Step 2**
We will send a claim form to the claimant and explain how to complete it. The claimant should receive the claim form within 15 days of giving Us notice of claim.

**Step 3**
When the claimant receives the claim form, the claimant should fill it out as instructed and return it with the required Proof described in the claim form.

If the claimant does not receive a claim form within 15 days after giving Us notice of claim, Proof may be sent using any form sufficient to provide Us with the required Proof.

**Step 4**
The claimant must give Us Proof not later than 90 days after the date of loss.

If notice of claim or Proof is not given within the time limits described in this section, the delay will not cause a claim to be denied or reduced if such notice and Proof are given as soon as is reasonably possible.

**Items to be Submitted for a Disability Income Insurance Claim**

When submitting Proof on an initial or continuing claim for Disability Income insurance, the following items may be required:

- documentation which must include, but is not limited to, the following information:

  - the date Your Disability started;
  - the cause of Your Disability;
  - the prognosis of Your Disability;
  - the continuity of Your Disability; and

  - Your application for:
    - Other Income;
    - Social Security disability benefits; and
    - Workers compensation benefits or benefits under a similar law.

- Written authorization for Us to obtain and release medical, employment and financial information and any other items We may reasonably require to document Your Disability or to determine Your receipt of or eligibility for Other Income;

GCERT2000
claim

**FILING A CLAIM (continued)**

- any and all medical information, including but not limited to:

    - x-ray films; and

    - photocopies of medical records, including:
        - histories,
        - physical, mental or diagnostic examinations; and
        - treatment notes; and

- the names and addresses of all:

    - physicians and medical practitioners who have provided You with diagnosis, treatment or consultation;
    - hospitals or other medical facilities which have provided You with diagnosis, treatment or consultation; and
    - pharmacies which have filled Your prescriptions within the past three years.

**Time Limit on Legal Actions.**  A legal action on a claim may only be brought against Us during a certain period.  This period begins 60 days after the date Proof is filed and ends 3 years after the date such Proof is required.

**EXHIBIT "B"**

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------

CINDY HOGAN-CROSS,                      :

               Plaintiff,          :     08 CV 00012 (LAK)

                       :

    - against -                          :     **ECF**

                       :

METROPOLITAN LIFE INSURANCE             :

COMPANY and INTERNATIONAL BUSINESS      :

SYSTEMS, CORP.                          :     **AMENDED COMPLAINT**

              Defendants.         :

-----------------------------------------------------------

     Plaintiff, CINDY HOGAN-CROSS, by and through her attorneys, FRANKEL &

NEWFIELD, P.C., as and for her Amended Complaint against Defendants METROPOLITAN LIFE

INSURANCE COMPANY ("MetLife") and INTERNATIONAL BUSINESS SYSTEMS, CORP.

("IBM"), hereby sets forth the following:

### THE PARTIES

     1.     At all times hereinafter mentioned, Plaintiff CINDY HOGAN-CROSS, was

and still is a resident of the State of Texas.

     2.     Upon information and belief, at all times hereinafter mentioned, Defendant

Met Life is a publicly owned life insurance company and a corporation organized and existing under

the laws of the State of New York with its principal place of business at One Madison Avenue, New

York, New York.

     3.     Upon information and belief, at all times hereinafter mentioned, Defendant

IBM is a publicly owned and traded corporation organized and existing under the laws of the State

of New York, with its principal place of business at New Orchard Road, Armonk, New York.

## JURISDICTION AND VENUE

4.    Jurisdiction is founded on 28 U.S.C. §1331 because this action arises under 29 U.S.C. §1001 et. seq. (Employee Retirement Income Security Act of 1974, hereinafter "ERISA").

5.    Venue in the Southern District of New York is appropriate because both Defendant Met Life and Defendant IBM reside in this judicial district, are subject to personal jurisdiction in this judicial district and maintain contacts in this judicial district sufficient to subject both to personal jurisdiction.

6.    Pursuant to 28 U.S.C. §1391(a)(1) and §1391(c), this action is properly venued in the Southern District of New York.

## FACTS

7.    At all relevant times hereinafter mentioned, Plaintiff was an employee of IBM.

8.    During Ms. Hogan-Cross's employment with IBM, Defendant Met Life issued to IBM a long term group disability income policy (hereinafter the "Policy").

9.    At all times hereinafter mentioned, said disability policy of insurance was issued for the benefit of certain eligible IBM employees in exchange for the payment of premiums by IBM and/or the employees.

10.    At all times mentioned herein, Plaintiff was and is an employee eligible for disability benefits and an insured under the Policy issued by IBM.

11.    Said policy issued by IBM provided, among other things, that disability insurance payments will be made to Plaintiff in the event that she becomes disabled.

12.    On or about April 20, 2006, during the period within which said Policy was in full force and effect, and while Plaintiff was an eligible employee, Plaintiff became disabled

2

within the meaning and pursuant to the terms of said Policy.

13.    The Social Security Administration has determined that Plaintiff became disabled on April 19, 2006.

14.    As of this date, Plaintiff continues to be disabled in that she is unable to perform the duties of her occupation or any gainful occupation taking into account her training, education and experience.

15.    Plaintiff's disability is caused by, among other things, fibromyalgia, hypothyroid, migraine, chronic pain, cognitive dysfunction, numbness, as well as the functional limitations caused by these disorders.

16.    After receiving the claim forms, Plaintiff filed a claim, cooperated with Defendant MetLife, provided proper proof of loss, and otherwise compiled with the policy terms and conditions regarding the filing of a claim.

17.    Pursuant to the policy, MetLife  was obligated to commence the periodic payment of monthly benefits to Plaintiff on a timely basis.

18.    Met Life accepted Plaintiff's claim for short term disability benefits and paid benefits under the policy for a period of time, thereby admitting that Plaintiff suffered a serious and disabling condition that prevented her from performing the duties of her occupation.

19.    At some point thereafter, and despite Plaintiff's continuing total disability, Defendant denied further benefits to Plaintiff and continues to refuse to pay further benefits pursuant to the policy, although payment thereof has been duly demanded.

20.    Said refusal on the part of Defendant MetLife  is a willful and wrongful breach of the policy terms and conditions.

3

21.    Monthly benefits to Plaintiff are continuing to be due and payable by Defendant MetLife with the passage of each month.

22.    Defendant MetLife is a conflicted decision maker because it has a financial interest in the outcome of Plaintiff's claim and has a corporate policy to deny or terminate legitimate claims.

23.    Defendant Met Life's structural conflict of interest due to its financial interest in the claim and its corporate policy to deny legitimate claims pervaded its handling of Plaintiff's claim, resulting in a number of procedural irregularities in its claim handling, including but not limited to, the refusal to accept the well supported findings of Plaintiff's medical doctors, misplaced and biased reliance upon limited surveillance observation of Plaintiff that does not depict functional ability to work in any occupation on a sustained basis, the refusal to consider the well supported findings of the Social Security Administration, despite accepting the financial benefit of Plaintiff's award of Social Security Disability benefits, and the failure to consider the significant physical, mental, emotional and stamina requirements or the duties of any occupation for which she is qualified taking into account  training, education or experience and her predisability earnings.

24.    Defendant Met Life's claim handling resulted in numerous violations of 29 CFR  § 2560.503-1, the ERISA regulations governing Plaintiff's claim.

25.    Defendant Met Life's claim handling failed to provide Plaintiff with a full and fair review of her claim.

26.    Defendant Met Life's claim handling demonstrates a bias against

4

Plaintiff's claim due to its impact on Defendant Met Life's financial situation and prevented Plaintiff from receiving a full and fair review of her claim.

27.    Plaintiff has exhausted all administrative appeals and remedies to the extent they exist pursuant to the conditions of the employee benefit plan.

28.    Plaintiff continues to be totally disabled, and monthly benefits are due and owing to him with the passage of each month.

## AS AND FOR A SECOND CAUSE OF ACTION

29.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "28" with the same force and effect as if set forth more fully herein.

30.    Upon information and belief, Plaintiff was eligible for additional employee benefits through her employment with IBM that are directly linked to her eligibility for disability benefits.

31.    As a result of the claim determination against Plaintiff, her other employee benefits have been impacted.

## AS AND FOR A THIRD CAUSE OF ACTION (ERISA 502(a)3))

32.    Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "31" with the same force and effect as if set forth more fully herein.

33.    The Employee Retirement Income Security Act of 1974 ("ERISA") was enacted to protect the interests of employees in the administration of their employer's welfare benefit plans.  In addition to conferring numerous rights upon plan participants, ERISA imposes duties upon the people and corporations who are responsible for the operation of such plans.  By law, plan fiduciaries are required to discharge their duties prudently, diligently, and solely in the interest of the plan's beneficiaries, for the exclusive purpose of providing promised benefits.

34.     ERISA requires every employee welfare benefit plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the Plan" [29 U.S.C. § 1102 (a)(1)].  Either by operation of law or through the implementation of ERISA plan documents, the employer of Plaintiff delegated its fiduciary responsibility for claims administration to one or more of the named Defendants, either directly or indirectly.

35.     Defendant Met Life and its agents has determined or participated in determining the eligibility of Plaintiff for disability benefits and/or had the discretionary authority or discretionary responsibility in the administration of Plaintiff's plan.   Accordingly, at all relevant times herein, Defendant Met Life was and is a fiduciary pursuant to ERISA [29 U.S.C. § 1002 (21)].

36.     Upon information and belief, Defendant Met Life's implementation and application of the foregoing offending claim's practices has caused and continues to cause harm to Plaintiff in violation of ERISA.

37.     By virtue of the conduct described above, Defendant Met Life breached its fiduciary obligations to Plaintiff under ERISA [29 U.S.C. § 1104(a)] to discharge its duties "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries . . . with the care, skill, prudence, and diligence . . . [of a] prudent man . . . and in accordance with the documents and instruments governing the plan . . . ."

38.     By managing, operating and administering ERISA-governed plans in the manner described above, Defendant Met Life has failed to exercise the care of an ordinary prudent person engaged in a similar activity under prevailing circumstances, all in violation of

ERISA [29 U.S.C. § 1104(a)(1)(B)].

39.    By the foregoing offending claims practices, Defendant Met Life failed to discharge its fiduciary duties in accordance with plan documents and ERISA's legislative scheme.

40.    As a result of the breaches of fiduciary duty as described above, Plaintiff has been harmed and continues to be harmed.

41.    As a participant in an ERISA-governed benefit plan, Plaintiff is entitled to appropriate equitable relief under ERISA [29 U.S.C. § 1132(a)(3)] to (a) obtain appropriate injunctive relief immediately stopping the offending and egregious practices that are causing ongoing harm to Plaintiff, and (b) redress the violations of §1104 set forth herein.

42.    Plaintiff does not have an adequate remedy at law, inasmuch as any benefit action under ERISA 502(a)(1)(B) will result in having further claim determinations made by Defendant Met Life, who has previously demonstrated an inability to act as a neutral claim evaluator.

**WHEREFORE**, Plaintiff CINDY HOGAN-CROSS prays that she may have a declaratory judgment herein declaring the rights and other legal relations of the parties hereto regarding the matters set forth in this Amended Complaint specifying the following:

a)    Plaintiff is disabled pursuant to the language and within the meaning of the subject policy of insurance issued by Defendant;

b)    Defendant Met Life is obligated to pay continuing benefits to Plaintiff pursuant to the policy and shall pay all benefits in arrears due and owing since the denial of benefits, plus interest;

c)      Defendants' obligation to pay benefits to Plaintiff shall continue as long as she remains totally disabled, subject to the applicable benefit period in the policy;

d)      Pursuant to ERISA §502 et. seq., Plaintiff shall be entitled to recoup his attorney's fees, as well as all other costs and disbursements of this action;

e)      Plaintiff shall be entitled to the continuation of her other employee benefits that are linked to her disability status through IBM;

f)      Pursuant to ERISA 502(a)(3), Plaintiff shall be entitled to appropriate equitable relief, including the removal of Defendant Met Life as claims administrator, and the imposition upon Defendant IBM of substituting Defendant Met Life as claims administrator;

g)      Plaintiff may return to this Court, upon motion, to seek further declaratory relief in the event that it becomes necessary; and

h)      Such other and further relief as the Court may deem just and proper.


Dated: Garden City, New York
       March 14, 2008

By:    _____
       Justin C. Frankel (JF-5983)
       Jason A. Newfield (JN-5529)
       FRANKEL & NEWFIELD, P.C.
       585 Stewart Avenue
       Garden City, New York 11530
       Attorneys for Plaintiff

8

## CERTIFICATE OF SERVICE

I, Jason Newfield, hereby certify that on March 14, 2008, a copy of the foregoing

Plaintiff's AMENDED COMPLAINT was mailed by first-class mail to the counsel listed below:

> Allan Marcus, Esq.
> LESTER SCHWAB KATZ & DWYER, LLP
> 120 Broadway
> New York, NY 10271

_____
Jason Newfield (JN 5529)