LSK&D #: 564-8006 / 1050730
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CINDY HOGAN-CROSS,

                                     Plaintiff,

                -against-

METROPOLITAN LIFE INSURANCE
COMPANY,

                                    Defendant.
------------------------------------------------------------------x

No. 08 CV 00012 (LAK)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

Of Counsel:
Allan M. Marcus

Lester Schwab Katz & Dwyer, LLP
120 Broadway
New York, New York 10271-0071
(212) 964-6611
Attorneys for Defendant

Defendant Metropolitan Life Insurance Company ("MetLife") respectfully submits this Memorandum of Law in Support of its Motion for Reconsideration, pursuant to Local Civil Rule 6.3, of the Court's Order entered July 3, 2008[1] granting, in part, plaintiff's motion to compel discovery.

## PRELIMINARY STATEMENT

In its Order, the Court ordered MetLife to respond to certain of plaintiff's document requests and interrogatories and produce for deposition a corporate witness knowledgeable about certain topics. The Court's rationale for permitting such discovery in this ERISA-plan benefits case was to explore "to what extent the [claims] decision in plaintiff's case actually was affected by a conflict of interest." (Order, p. 1) A number of the discovery requests ordered by the Court, however, have no relevance or reasonable connection to such inquiry. In addition, several of plaintiff's requests are overbroad in that they inquire about events outside of the time frame for plaintiff's benefits claim. For these reasons, MetLife respectfully requests that the reconsider and modify its Order. In addition, MetLife seeks to clarify the Court's order regarding the disclosure of its confidential and proprietary claims guidelines.

## ARGUMENT

### I. Law Governing Motions For Reconsideration

Motions for reconsideration are governed by Local Civil Rule 6.3 and are committed to the sound discretion of the District Court. See AT&T Corp. v. Microsoft Corp., No. 01 CIV 4872, 2004 WL 309150, at *1 (S.D.N.Y. Feb. 19, 2004). Under Local Rule 6.3, "the moving party must demonstrate controlling law or factual matters put

---

[1] A copy of the Court's Order of July 3, 2008 is attached hereto as Exhibit A.

1

before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." Montanile v. National Broadcasting Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002), aff'd, 2003 WL 328825 (2d Cir. Feb. 13, 2003).

### II. Discovery Requests Which Should Be Reconsidered and Modified

A. Reports of approval and termination rates for IBM Plan LTD claims for 2003-2007 (document request nos. 28 – 30; interrogatories nos. 14 – 16; deposition topics 4, 6); statistics regarding LTD claims administered by MetLife in litigation (2005-2007) (document request No. 14)[2]

In addition to being overbroad as to the specified time periods, these inquiries are completely irrelevant to whether a conflict of interest actually affected MetLife's handling of plaintiff's LTD benefits claim. Because each disability claim is based on individualized facts and circumstances, such statistics are meaningless. (In addition, since such statistics are not kept by MetLife in the ordinary course of business, gathering this information would impose an enormous burden on MetLife.) Thus, whether such statistics show a claim approval rate of 95% or 75% or 55%, what does it prove with respect to whether MetLife had an actual conflict of interest with respect to administering plaintiff's claim? Statistics about lawsuits involving LTD benefits claims administered by MetLife are similarly meaningless and irrelevant. Moreover, plaintiff's inquiries about LTD benefits claim termination rates are irrelevant where plaintiff's own claim was not terminated but rather initially denied. In short, MetLife's objections to responding to these inquiries should be sustained by the Court since they have nothing to do with conflict of interest.

B.  Inquiries regarding the compensation earned by MetLife employees and non-party medical professionals who reviewed plaintiff's claim file for years 2002-2007 (document request no. 12; interrogatories nos. 5,6,17)

Although the Court limited such inquiries to "persons involved in evaluating, advising upon, or determining plaintiff's eligibility for continued benefits" (Order, p. 2), disclosure of the compensation for claims personnel who handled plaintiff's claim, by itself, has no relevance to MetLife's alleged conflict of interest with respect to handling plaintiff's claim.[3] Moreover, since the conflict-of-interest inquiry is directed at MetLife, which made the claim decision at issue, the compensation of non-MetLife parties, such as independent physician consultants (IPC), is wholly irrelevant. See, e.g., Abromitis v. Continental Cas. Co., 261 F. Supp. 2d 388, 390 (W.D.N.C. 2003) (holding that compensation of outside consultant not relevant to conflict-of-interest discovery since consultant was not claim decisionmaker), aff'd, 114 Fed. Appx. 57 (4th Cir. 2004). Therefore, MetLife's objections to these inquiries should be sustained by the Court on reconsideration.

C.  Inquiries regarding performance evaluations of MetLife employees "involved in this claim" (document request no. 26; interrogatory no. 18)

In its Order, the Court held that "whether ... the decision-maker's performance evaluations ... depended directly or indirectly on the termination of benefits ... would be highly pertinent" to determining whether and to what extent an actual conflict of interest influenced MetLife's benefits determination. (Order, p. 1) Plaintiff's document request

---

[2] The discovery requests and responses were attached as Exhibits A and B to MetLife's opposition to plaintiff's motion to compel dated June 30, 2008.

(no. 26) in this regard is overbroad, in that it seeks performance evaluations of those MetLife employees "involved in" plaintiff's claim from 2003 – 2007. In accordance with the Court's rationale, MetLife requests that the Court, on reconsideration, limit such inquiries to those MetLife employees charged with making the claim decisions in this case, namely the case manager who initially denied plaintiff's claim and the appeals specialist who upheld such claim denial on appeal. MetLife also requests that disclosure of its employees' performance evaluations be subject to a Confidentiality Order.

> D.  Inquiries regarding information which can be found in the claim file (Interrogatories no. 1, 4, 19)

MetLife properly responded to plaintiff's interrogatories requesting names of MetLife employees and others who were involved in adjudicating plaintiff's claim. Pursuant to Fed. R. Civ. P. 33(d), MetLife referred plaintiff to the administrative claim file which had been produced. Clearly, the name of the MetLife claims person who made the final claim decision in this case - - Sharon Muldrow - - was readily discernible to plaintiff, who has noticed Ms. Muldrow's deposition. Likewise, the names of IPCs who evaluated plaintiff's file are likewise readily discernible from the claim file. Therefore, on reconsideration, the Court should sustain MetLife's responses/objections to these inquiries.

---

[3] The relevant inquiry with respect to conflict of interest is whether MetLife's claims personnel were compensated or rewarded based on number of claims denied or terminated. The answer to such inquiry is "No."

4

    E.    Inquiries which seek information outside the relevant time-frame for plaintiff's claim, namely October 2006 to August 2007 (See, e.g., document request nos. 14, 26, 28-30; interrogatories nos. 6-9, 14-16, 24.)

In various inquiries, plaintiff seeks information for time periods ranging from 2002 to the present. Because plaintiff's LTD benefits claim was adjudicated during the period October 2006 to August 2007, inquiries outside that time-frame are overbroad and irrelevant and should not be permitted by the Court.

    F.    Production of attorney-client privileged documents relating to plaintiff's claim (document request no. 6)

Since the rationale for permitting such discovery is to inquire into whether and to what extent a conflict of interest influenced MetLife's claim decision, production of attorney-client communications (if any) should be limited to the time period of the claim adjudication process. Once the claim decision was finalized, any such attorney-client communications are irrelevant to the conflict-of-interest inquiry. Therefore, MetLife respectfully requests that the Court, on reconsideration, so limit production of such attorney-client communications. See, e.g., Five Borough Bicycle Club v. The City of New York, No. 07 CIV 2448 (LAK), 2008 WL 704209, at *3 (S.D.N.Y. March 10, 2008) (holding that, because documents demanded "are of limited if any relevancy," court can excuse non-compliance with Local Civ. R. 26.2).

### III.    Disclosure Of Internal Claim Guidelines Should Be Subject To Confidentiality Order

In its response to Document Request No. 7, MetLife agreed to produce the guidelines used to administer claims under the IBM LTD Plan, subject to a confidentiality order. MetLife has obtained such confidentiality orders in other ERISA

cases, including several in which attorneys Frankel & Newfield represented plaintiffs.[4] Production of pertinent portions of the claims guidelines subject to a Confidentiality Order would in no way prejudice plaintiff. MetLife therefore respectfully requests that the Court modify its Order to make clear that disclosure of such confidential and proprietary materials are to be protected by a Confidentiality Order.[5]

Dated:    New York, New York
           July 21, 2008

Respectfully submitted,

LESTER SCHWAB KATZ & DWYER, LLP

_____
Allan M. Marcus (AM-9027)
120 Broadway
New York, New York 10271
(212) 964-6611
Attorneys for Defendant
Metropolitan Life Insurance Company

TO:

Justin C. Frankel, Esq. (JF-5983)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue
Garden City, New York 11530
Attorneys for Plaintiff

---

[4] See, e.g., Hobson v. MetLife, No. 05 cv 7321(AKH) (S.D.N.Y.) (Frankel & Newfield represented plaintiff); Asuncion v. MetLife, No. 04 cv 6598(SAS) (S.D.N.Y.) (Frankel & Newfield represented plaintiff); Winkler v. MetLife, No. 03 CIV 9656 (SAS) (S.D.N.Y.); Solomon v. MetLife, No. 06 CV 2375 (RWS) (S.D.N.Y.).

[5] If the Court wishes, MetLife can make a separate application for a protective order with respect to its claim guidelines.

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
CINDY HOGAN-CROSS,

                Plaintiff,

       -against-                         08 Civ. 0012 (LAK)

METROPOLITAN LIFE INSURANCE
COMPANY, et ano.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/3/08
```

## ORDER

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff, a former IBM employee, brings this action against defendant Metropolitan Life Insurance Company ("MetLife"), the underwriter and administrator of IBM's group long term disability insurance policy, under ERISA to recover disability benefits. The matter is before the Court on plaintiff's motion to compel discovery.

        As is quite common in such actions, MetLife maintains that its termination of plaintiff's benefits must be upheld unless it was arbitrary and capricious and that the review of its actions is limited to its administrative claim file. Plaintiff, for her part, seeks *de novo* review and, in any case, seeks disclosure beyond the administrative claim file, particularly concerning the extent and effect, if any, of MetLife's structural conflict of interest, i.e., the conflict inherent in the fact that it both determined plaintiff's eligibility for benefits and had a financial interest in doing so.

        It is unnecessary at this point to decide whether review ultimately will be limited to the administrative record or, for that matter, its appropriate scope. Certainly MetLife's structural conflict of interest, if other good cause exists, would afford this Court discretion to consider evidence outside the administrative record. *E.g., Paese v. Hartford Life Accident Ins. Co.,* 449 F.3d 435, 441 (2d Cir. 2006). Moreover, regardless of whether review of the merits of the termination of benefits ultimately is confined to the administrative record, the question whether and to what extent the decision in plaintiff's case actually was affected by a conflict of interest – for example, whether an advisor's or the decision-maker's performance evaluations, compensation, and advancement prospects depended directly or indirectly on the termination of benefits – would be highly pertinent.

2

Accordingly, MetLife's position is essentially without merit.[1]

This is not to say that plaintiff is entitled to everything she seeks. Her demands are somewhat overbroad.

Accordingly, plaintiff's motion is granted to the following extent:

1. Defendant shall produce, on or before July 28, 2008, the documents sought by Request Nos. 1 through 7, 10 through 11, 12 (limited to requested documents relating to persons involved in evaluating, advising upon, or determining plaintiff's eligibility for continued benefits), 14 through 16, 18, and 26 through 30.

2. Defendant shall respond, on or before July 28, 2008, to Interrogatory Nos. 1, 3 through 9, 11, 14 through 19, 22, and 24.

3. Defendant shall comply with plaintiff's notice of deposition insofar as it seeks testimony on subject areas listed in the notice and numbered 2 through 4, 6 through 11, 14 and 16.

SO ORDERED.

Dated:    July 3, 2008

_____
Lewis A. Kaplan
United States District Judge

---

[1] So too is its blunderbuss privilege objection to Document Request No. 6. Despite having been reminded by plaintiff's discovery requests that a privilege log must be produced in accordance with local rules in the event privilege was asserted (S.D.N.Y. Civ. R. 26.2), MetLife simply declined to respond on the ground of privilege and produced no log. It thereby waived any privilege to which it otherwise might have been entitled. *E.g., Morisseau v. DLA Piper*, No. 06 Civ. 13522(LAK), 2007 WL 4292030, at *2 (S.D.N.Y. Dec. 3, 2007); *In re Parmalat Secur. Litig.*, No. 04 MD 1653(LAK), 2005 WL 1529035, at *3 n. 21 (S.D.N.Y. June 28, 2005); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 96 Civ.2064(RWS), 1996 WL 668862, at *4 (S.D.N.Y. Nov. 19, 1996).